UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOHN H. CORNEALUS, | ) | 1:04-CV-06338 GSA HC |
| | ) | |
|       Petitioner, | ) | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| | ) | |
|       v. | ) | |
| | ) | ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT |
| ROBERT A. HOREL, Warden, | ) | |
| | ) | ORDER DECLINING ISSUANCE OF CERTIFICATE OF APPEALABILITY |
|       Respondent. | ) | |
| | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties having voluntarily consented to exercise of Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1), by order dated March 3, 2005, this case was assigned to the Magistrate Judge for all purposes, including entry of final judgment.

## BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Fresno, following his conviction by jury trial on May 25, 2000, of four counts of residential robbery in violation of California Penal Code § 211, and one count of first degree burglary in violation of California Penal Code § 459. See Lodged Doc. No. 13.[1] In addition, Petitioner was found guilty of the enhancement charged for personally using a firearm during commission of the offenses in violation of California Penal Code

---

[1] "Lodged Doc." refers to the documents lodged by Respondent with his response.

1  §§ 12022.5(a)(1), 12022.53(b). Id. Petitioner admitted allegations that he had previously suffered a
2  prior serious felony conviction and served a prior prison term within the meaning of California Penal
3  Code §§ 667(a)(1), 667(b)-(i). Id. On August 22, 2000, Petitioner was sentenced to serve a total
4  determinate term of twenty-eight years in state prison. Id.

5       Petitioner filed a notice of appeal to the California Court of Appeals, Fifth Appellate District
6  (hereinafter "Fifth DCA"). On October 18, 2002, the Fifth DCA affirmed the judgment. See Lodged
7  Doc. No. 3. Petitioner then filed a petition for review in the California Supreme Court, and the
8  petition was summarily denied on January 15, 2003. See Lodged Doc. No. 5.

9       Petitioner next filed a petition for writ of habeas corpus in the Fresno County Superior Court,
10 which was denied on May 29, 2003. See Lodged Docs. Nos. 6, 7. He then filed a habeas petition in
11 the Fifth DCA, and that petition was denied on October 30, 2003. See Lodged Docs. Nos. 8, 9. He
12 then filed a habeas petition in the California Supreme Court, which was denied on August 11, 2004.
13 See Lodged Docs. Nos. 10, 11.

14      On September 30, 2004, Petitioner filed the instant federal petition in this Court. The petition
15 presents the following six (6) grounds for relief: (1) Petitioner alleges he was denied the effective
16 assistance of counsel for defense counsel's insistence that Petitioner enter into a plea bargain; (2)
17 Petitioner contends he was denied effective assistance of counsel when defense counsel failed to
18 investigate or call a witness to testify; (3) Petitioner alleges he was denied his right to substitute
19 counsel; (4) Petitioner claims he was denied his right to confront a witness; (5) Petitioner alleges he
20 was denied his right to introduce expert witness testimony; (6) Petitioner contends the trial court
21 committed reversible error in instructing the jury with CALJIC No. 2.71.5.

22      Respondent filed an answer to the petition on March 3, 2005. Respondent concedes the
23 petition is exhausted. On April 11, 2005, Petitioner filed a traverse.

## FACTUAL BACKGROUND[2]

25      On the evening of June 3, 1999, Roosevelt Maldonado ("Maldonado"), Jamie Barracio
26 ("Barracio"), Manuel Almanzar ("Almanzar"), Connie Garza ("Garza"), and three-year-old Andrew

---

[2] The facts are derived from the factual summary of the case as set forth by the 5th DCA in its opinion of October 18, 2002.

were in Maldonado's Fresno apartment when a man waving a gun walked in, picked up Andrew, told everyone to get on the ground, and demanded money. Garza grabbed Andrew from the man and the group fell to the floor as another man entered the room and joined in the robbery. Almanzar and Garza heard one intruder call the other "June." One of the men also ordered the other to shoot if anyone moved. The two men left the apartment within five minutes, taking cash, a shirt, three telephones, a pager, and a rifle.

Garza positively identified Petitioner in a photo line-up, a live line-up, at the preliminary hearing, and at trial as the man with the gun referred to by the other as "June." She specifically remembered he came to the apartment the day before the robbery looking for marijuana. A neighbor also identified Petitioner running from the apartment complex with a rifle after the robbery.

State Officer Ronald Hill visited Petitioner before trial and saw him respond to the name "June." District Attorney Investigator Greg Noll interviewed an individual in custody who also referred to Petitioner as "June."

See Lodged Doc. No. 3.

**DISCUSSION**

**I.  Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997)

1  (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was
2  filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II.  Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state

U.S. District Court
E. D. California          cd                                           4

court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

### III.  Review of Petitioner's Claims

#### A. Ground One

In his first ground for relief, Petitioner claims he was denied the effective assistance of counsel in violation of the Sixth Amendment when defense counsel urged Petitioner to accept a negotiated plea. Petitioner claims counsel felt sorry for the victim in this case and therefore urged him not to subject the victim to a trial.

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must

show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different," 466 U.S., at 694. Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688.  The court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984).  Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. See Strickland, 466 U.S. at 692; United States v. Cronic, 466 U.S., at 659, and n. 25, 104 S.Ct., at 2046-2047, and n. 25 (1984).  Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000).  Weighall v. Middle, 215 F.3d 1058, 1062 (2000).

In this case, Petitioner has failed to demonstrate any prejudice resulting from counsel's actions. Petitioner did not accept the negotiated plea; rather, he pleaded not guilty and proceeded to trial. Because he cannot establish any prejudice, the claim must be denied.

**B. Ground Two**

Officer Ronald Hill testified he had heard Petitioner answer to his sister when she called him by the nickname "June" on previous occasions. (RT[3] 1156.) Defense counsel objected on hearsay grounds and moved to strike, and the trial court initially sustained the objection. (RT 1156-1157.) When the prosecutor commented on the objection, the trial court reserved its ruling based in part on the fact that the sister's statement was not being offered for the truth of the matter asserted. Petitioner contends he was denied effective assistance of counsel for defense counsel's failure to investigate and call the sister, "Schnell Tenison," as a witness to rebut the testimony of Officer Hill.

As set forth above, to establish a claim of ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687.  Petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that where not the result of reasonable professional judgment considering the circumstances. Id. at 688. In addition, Petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different," 466 U.S., at 694.

This claim was first presented in a habeas petition to the Fresno County Superior Court.  On May 29, 2003, the superior court denied the claim in a reasoned opinion. See Lodged Doc. No. 7. Petitioner then presented the claim in petitions to the Fifth DCA and California Supreme Court were it was summarily denied without comment. The California Supreme Court, by its "silent order" denying review of the decision, is presumed to have denied the claims presented for the same reasons stated in the opinion of the superior court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In this case, Petitioner has failed to show counsel erred. First as Respondent points out, counsel did investigate Schynell Tenison as she had been subpoenaed by the defense as a possible witness. (RT 209-210.) Second, counsel did not err in failing to call her as a defense witness. Officer Hill's statement was not offered to show Petitioner's name was in fact "June." The statement was

---

[3]"RT" refers to the Reporter's Transcript lodged with the Court.

offered to show that Petitioner had responded to the nickname in the past.

Furthermore, Petitioner cannot demonstrate prejudice resulting from counsel's alleged error. Even if counsel had called Tenison to the stand ostensibly to testify that she did not call Petitioner by the name "June," there was substantial evidence admitted otherwise which showed Petitioner did go by the nickname "June." Petitioner's accomplice, Derrell Jones, admitted to Investigator Greg Noll that Petitioner went by the nickname "June." (RT 1203.) The victim Garza positively identified Petitioner as the man referred to as "June" during the robbery. (RT 342.) In addition as noted by Respondent, on several occasions prior to and during trial Garza positively identified Petitioner as the man called "June" who committed the robbery: 1) She identified Petitioner at trial as the man who picked up her son and committed the robbery (RT 335); 2) She recognized him from the day before the robbery when Petitioner approached her house, contacted her, and asked her for marijuana (RT 336); 3) She testified that she heard Petitioner's accomplice call Petitioner by the name "June" during the robbery (RT 342); 4) She identified Petitioner several times in a book of approximately 2,500 mug shots (RT 349-351, 1127); 5) She identified Petitioner at a live line-up (RT 349-351); and 6) She identified Petitioner from a photo line-up within 10 to 15 seconds of viewing it (RT 1123-1124).

In light of the overwhelming evidence of Petitioner's identity as the man called "June" who committed the robbery, there is no probability that, but for counsel's alleged error, the result would have been different. Strickland, 466 U.S. at 694. Therefore, it cannot be said that the state court rejection of this claim was unreasonable. The claim must be rejected.

**C. Ground Three**

Petitioner next alleges he was denied effective assistance of counsel when the trial court improperly ruled on Petitioner's motion for substitution of counsel pursuant to People v. Marsden, 2 Cal.3d 118 (1970.)

On March 2, 2000, a trial readiness conference was held before Honorable W. Kent Levis, and all parties appeared. (CT[4] 101.) The minute order and transcript of the proceedings show a

---

[4]"CT" refers to the Clerk's Transcript lodged with the Court.

1  Marsden motion was reserved for trial at Petitioner's request, and trial was scheduled to begin on
2  March 6, 2000. (CT 101; ART[5] 5.) Thereafter, the trial date was repeatedly continued until trial
3  commenced on May 12, 2000, before Honorable Jane York. (RT 205.) From the time Petitioner
4  requested his motion be reserved until trial actually commenced, Petitioner did not file a written
5  Marsden motion. From the first day of trial, Petitioner never alerted the court that he was dissatisfied
6  with defense counsel and desired new counsel. Therefore, Petitioner cannot now complain the trial
7  court improperly ruled on his motion for substitution of counsel when the issue was never presented
8  to the trial court. The claim is without any factual foundation and must be rejected.

### D. Ground Four

In his next claim, Petitioner argues the trial court acted to prevent him from presenting the criminal history of witness Derrell Jones to the jury. He claims he should have been allowed to present evidence that Jones was a gang member who had possibly been involved in numerous "take over" robberies. He argues the trial court denied his right to confront Jones and attack his credibility on cross-examination. He further contends the evidence would have shown Jones was more likely the perpetrator of the crimes. Petitioner also argues he was denied exculpatory evidence of Jones' criminal history by the prosecution in violation of Brady v. Maryland, 373 U.S. 83 (1963).

The evidence referred to by Petitioner comes from an investigative report prepared by Investigator Noll. Prior to Jones' testimony, the parties discussed his conviction with the trial court. As noted by Respondent, defense counsel never objected to a general reference to Jones having sustained a prior felony conviction. (RT 1151-1154, 1188-1189, 1190-1191, 1195-1196.) Therefore, Petitioner's claim that the trial court acted to prevent him from presenting Jones' criminal history is completely without foundation.

Petitioner's Brady claim is also factually unsupported. In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." See also Strickler v.

---

[5]"ART" refers to the Augmented Reporter's Transcript lodged with the Court.

Greene, 527 U.S. 263, 280-281 (1999). It is clear from the record that the prosecutor advised defense counsel prior to the Jones' testimony of the prior felony conviction.

For the above reasons, Petitioner's claim is completely meritless and must be rejected.

**E. Ground Five**

Petitioner next argues the trial court precluded Petitioner from presenting the expert testimony of psychologist Matthew J. Sharp regarding eyewitness identification. Petitioner's claim is belied by the record. Dr. Sharp did in fact testify as a defense witness and specifically addressed the subject matter of eyewitness identification. (RT 1270 *et seq*.) The claim is patently without merit.

**F. Ground Six**

In his final claim for relief, Petitioner argues the trial court erred in instructing the jury with CALJIC No. 2.71.5[6] with respect to adoptive admissions.

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. Estelle v. McGuire, 502 U.S. 62, 72 (1991). Additionally, the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id. The court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. See United States v. Frady, 456 U.S. 152, 169 (1982), *citing* Henderson v. Kibbe, 431 U.S. 145, 154 (1977).  Furthermore, even if it is determined that the instruction violated the petitioner's right to due process, a petitioner can only obtain relief if the unconstitutional instruction had a substantial influence on the conviction and thereby resulted in

---

[6]CALJIC No. 2.71.5 as given to the jury provides:

If you should find from the evidence that there was an occasion when the defendant, one, under conditions which reasonably afforded him an opportunity to reply or failed to make a denial in the face of an accusatory statement expressed directly to him or in his presence tending to connect him with the commission of a crime, and, three - - excuse me, and three, that he heard the accusatory statement and understood its nature, then the circumstance of his silence and conduct on that occasion may be considered against him as indicating an admission that the statement thus made was true.

Evidence of an accusatory statement is not received for the purpose of proving its truth but only as it supplies meaning to the silence and conduct of the defendant in the - - excuse me. But only as it supplies meaning to the silence and conduct of the accused in the case of it. Unless you find that the defendant's silence and conduct at the time indicated an admission that the accusatory statement was true, you must entirely disregard the statement.
(RT 1501-1502.)

actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (whether the error had a substantial and injurious effect or influence in determining the jury's verdict.); see also Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996).  A jury instruction is constitutionally sound if it creates a permissive inference that allows, but does not require, the jury to infer an essential fact from proof of another fact so long as "the inferred fact is more likely than not to flow from the proved fact on which it is made to depend." Schwendeman v. Wallenstein, 971 F.2d 313, 316 (9th Cir.1992) (citations and internal quotations omitted), *cert. denied*, 113 S.Ct. 975 (1993).

This claim was first presented and denied on direct appeal to the Fifth DCA. In rejecting this claim, the appellate court stated:

> [Petitioner] argues his failure to deny his nickname is "June" when Officer Hill visited was not a failure "to make a denial in the face of an accusatory statement" permitting an adoptive admission under CALJIC No. 2.71.4. [Petitioner] notes that being called "June" is neither an accusation nor a crime.
>
> "'When a person makes a statement in the presence of a party to an action under circumstances that would normally call for a response if the statement were untrue, the statement is admissible for the limited purpose of showing the party's reaction to it. [Citations.] His silence, evasion, or equivocation may be considered as a tacit admission of the statements made in his presence.'" (*People v. Riel* (2000) 22 Cal.4th 1153, 1189.) "'To warrant admissibility, it is sufficient that the evidence supports a reasonable inference that an accusatory statement was made under the circumstances affording a fair opportunity to deny the accusation; whether the defendant's conduct actually constituted an adoptive admission becomes a question for the jury to decide.'" (*Id*. at pp. 1189-1190.) "'For the adoptive admission exception to apply, . . . a direct accusation in so many words is not essential.'" (*Id*. at p. 1189.)
>
> Sufficient foundation existed for the trial court to permit the jury to consider, as an adoptive admission, testimony that [Petitioner] responded to the name "June." While calling [Petitioner] "June" was not a direct accusation of criminal activity, his response permitted the jury to infer that [Petitioner] and the perpetrator of the crimes shared the same name and were possibly the same individual. Contrary to [Petitioner's] belief, the jury was not told to view [Petitioner's] response to the name "June" as an admission of guilt. The instruction did not refer to any particular evidence or cause the jury to infer [Petitioner] committed the crimes simply because he responded to the name. Instead, the trial court defined adoptive admissions generally and instructed the jurors to disregard any untrue accusatory statement. (*See People v. Medina* (1990) 51 Cal.3d 870, 891.)
>
> Even assuming arguendo that [Petitioner's] response to the name "June" did not fall within the adoptive admission exception to the hearsay rule, the trial court's instruction to the jury with CALJIC No. 2.71.5 was harmless. (*Chapman v. California* (1967) 386, 18, 24.) Overwhelming evidence pointed to [Petitioner] as the perpetrator of the crimes; Garza positively identified [Petitioner] as one of the intruders, and a neighbor saw [Petitioner] fleeing the apartment complex with a rifle. Moreover, the adoptive admission instruction provided: "Unless you find that the defendant's silence and conduct at the time indicated an admission that the accusatory statement was true, you must entirely disregard the statement." Therefore, the jury would have discounted [Petitioner's] response to the name "June" if it

were not an accusatory statement. To the extent there was an insufficient evidentiary basis for instructing with CALJIC No. 2.71.5, its substantive provisions had not effect. See Lodged Doc. No. 3.

The court concluded the instruction was a correct statement of law and properly applied in this case. Federal courts are bound by state court rulings on questions of state law. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989). Even assuming the instruction was given in error, Petitioner cannot demonstrate any prejudice resulting therefrom. As discussed in Ground Two, *supra*, there was overwhelming evidence that Petitioner went by the nickname "June" and in fact committed the robbery, apart from Officer Hill's testimony. As Petitioner has failed to show the instructions had a substantial and injurious effect on the verdict, the state court rejection of this claim was not unreasonable and the claim must be denied.

In sum, the rejections of Petitioner's several claims by the state courts were neither contrary to nor an unreasonable application of clearly established Federal law, nor an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d). The petition must be denied.

## IV.  Certificate of Appealability

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 123 S.Ct. 1029, 1039 (2003).  The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

   (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

   (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

   (c)    (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–

         (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 123 S.Ct. at 1034; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 123 S.Ct. at 1040.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1) The petition for writ of habeas corpus is DENIED WITH PREJUDICE;

2) The Clerk of Court is DIRECTED to enter judgment for Respondent; and

3) The Court DECLINES to issue a certificate of appealability.


IT IS SO ORDERED.

Dated:   **October 25, 2007**              **/s/ Gary S. Austin**
                                          UNITED STATES MAGISTRATE JUDGE